Evelyn M. Daanen, et al. [1] v. Commissioner. Daanen v. Commissioner
Docket Nos. 3033-69, 3034-69, 4669-69, 4677-69.
United States Tax Court
T.C. Memo 1971-69; 1971 Tax Ct. Memo LEXIS 261; 30 T.C.M. (CCH) 286; T.C.M. (RIA) 71069; April 13, 1971, Filed Robert E. Nelson and Donald L. Gabel, Columbus Bldg. *262 , Green Bay, Wis., for the petitioners. Alan B. Shidler, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Four cases have been consolidated herein due to common issues. Respondent has determined deficiencies in gift tax for taxable year 1966 of $7,056.55 for each of petitioners Evelyn M. Daanen and the Estate of Sylvester Daanen, $4,353.80 with respect to Thomas H. Lutsey and $4,127.19 with respect to Bernice Lutsey. The primary issue to be decided in all of the cases before us is the amount of the gifts in question. Findings of Fact Some of the facts have been stipulated and are, together with the exhibits attached 287 to the stipulation of facts, incorporated herein by this reference. During the taxable years 1965 and 1966, Evelyn M. and Sylvester J. Daanen were husband and wife and resided in Green Bay, Wisconsin. Sylvester Daanen died June 13, 1967, and thereafter his wife, Evelyn, was duly appointed executrix of his estate. Petitioner Evelyn M. Daanen remained a resident of Green Bay and was so situated at the time of filing the petition herein. Sylvester J. Daanen (referred to hereafter as Daanen) and Thomas H. Lutsey *263 (referred to hereafter as Lutsey) were partners in the Gold Bond Ice Cream Company (referred to hereafter as Gold Bond). Gold Bond commenced business in 1952 with Daanen and Lutsey each owning a 50 percent interest in the partnership. The principal business activity of Gold Bond consisted of manufacturing and selling ice cream novelties, e.g., popsicles, drumsticks, ice cream cups, and fudgsicles. In the trade Gold Bond is known as a jobber in that it manufactures and sells its products to wholesalers who in turn sell to retail outlets. Responsibility for operation of the business was divided between the two general partners with Lutsey serving as production manager and Daanen in charge of sales and financial matters. The entire partnership interest remained in Daanen and Lutsey until December 30, 1955, at which time each created trusts for the benefit of his respective children, transferring thereto an interest in the business. Daanen, having three children (Ronald, Mary Ellen, and Sharon), transferred a 6 2/3 percent interest in the partnership into a separate trust for each child. The trust instruments named the Kellogg Citizens National Bank, Green Bay, Wisconsin (hereinafter *264 referred to as Kellogg), as trustee and empowered it to distribute or accumulate income at its discretion. The trusts were to run for 10 1/2 years, or until the death of the beneficiary, whichever is sooner, the corpus reverting to the settlor upon termination and the accumulated income to be distributed to each beneficiary. Lutsey made similar transfers to each of his two children. To the trust for the benefit of his son Thomas Jay, he transferred a 15 percent interest in the partnership. Kellogg again was appointed as trustee. This trust was to terminate on the son's 21st birthday or his death, whichever is sooner. Thomas Jay was seven years old at the creation of the 1955 trust, giving the trust a maximum term of approximately 14 years. Lutsey transferred a 5 percent partnership interest to a second trust for his mentally retarded daughter Sandra. The term of the trust was 10 1/2 years, or until the death of the beneficiary. Both Lutsey trusts contained provisions similar to those in the Daanen trusts regarding the trustee's power to accumulate and the beneficiaries' rights on termination. Simultaneously with the creation of the trusts, a new partnership agreement was entered *265 into. According to the agreement, Daanen and Lutsey were designated general partners with each of the newly created trusts named as "limited [partners]." Pursuant to this agreement, net profits or losses were to be distributed according to the following percentages: Percent
Thomas H. Lutsey
30
Sylvester J. Daanen
30
Kellogg Citizens National Bank as trustee for:
Ronald J. Daanen Trust
6 2/3
Mary Ellen Daanen Trust
6 2/3
Sharon C. Daanen Trust
6 2/3
Thomas Jay Lutsey Trust
15
Sandra Ruth Lutsey Trust
5
In addition, this agreement contained the following provision regarding withdrawal of the term trusts from participation in the partnership: 13. Withdrawal of limited partners - Any limited partner shall have the right to withdraw or reduce its interest in the partnership at the end of any year, provided three month's written notice shall have been given to both the general partners at the principal office of the partnership. In addition, any limited partner shall have the right to withdraw its interest upon termination of the partnership. Notwithstanding the foregoing, no part of the interest of any limited partner shall be withdrawn unless all *266 liabilities of the partnership, except liabilities to general partners and to limited partners on account of their interests, have been paid, or unless the partnership has sufficient assets to pay them. * * * In a supplement to the partnership agreement dated May 5, 1956, it was agreed that upon the termination of any of the trusts, said trust or its distributees would be entitled to no more than the amount of any accumulated income that had been invested in the partnership. Daanen, Evelyn Daanen, and Lutsey each filed gift tax returns for 1955 reporting 288 gifts based on the value of the particular income interest for ten years. [2]
Each year the share of the net partnership income allocable to the trusts was retained by the partnership for use in conducting its business affairs. The trustee was authorized to permit the partnership to retain the income by provision 6 of the 1955 trust agreement, which provides: 6. Participation in Partnership - The Trustee shall have the authority to participate *267 in any partnership, as a general or limited partner, with all of the powers which an individual owner could exercise in his own right, and may from time to time permit such partnership to retain its earnings in such amounts and for such periods of time as it may deem advisable. On the other hand, the trustee was restricted when lending to Gold Bond by provision 12 of the same agreement, which provides: 12. Lending - The Trustee may make loans at such rate of interest and on such collateral as it shall determine to be for the best interests of the trust estate, provided that no loan of corpus or income be made directly or indirectly to the settlor or his family, or to any partnership in which he participates or to any partner of the settlor, or any corporation controlled by him, without adequate interest or without adequate security. On March 10, 1962, Sandra Lutsey died. Pursuant to the terms of the trust agreement, her trust terminated with the 5 percent partnership interest reverting to her father and the amount of reinvested accumulated income passed to her brother Thomas Jay's trust. A new partnership agreement was drawn up on December 31, 1962. This agreement provided for *268 distribution of profits in the same percentages as the 1955 agreement except that Lutsey was to receive a 35 percent rather than 30 percent interest in the partnership. The other provisions remained substantially identical to the 1955 agreement. With the trusts approaching their termination date, Daanen and Lutsey, in December 1965, created a new trust for each of the four remaining children. The new trusts were irrevocable and would not terminate until the settlor's death. If a beneficiary died prior to termination, his interest in the partnership (the trust corpus) was to pass to whomever he appointed by will. Upon termination, each trust corpus was to pass to the beneficiary, together with any accumulated income. In December of 1965 each child signed a document that reads as follows: [3]
TRANSFER TO RONALD J. DAANEN Preamble Ronald J. Daanen is the beneficiary of a trust dated December 30, 1955, which owned an income interest in 6 2/3% of the partnership, Gold Bond Ice Cream Co. This trust terminates on June 30, 1966. Under the terms of the trust the accumulated net income is distributable to the beneficiary. This accumulated net income of prior years is invested in part *269 in Gold Bond Ice Cream Co., and in part in securities, bonds, and cash. Ronald J. Daanen desires to transfer the entire accumulated net income of this old trust to a new trust created by his father, Sylvester J. Daanen, dated December 31, 1965. Now Therefore Ronald J. Daanen hereby transfers to the Ronald J. Daanen Trust dated December 31, 1965, all his interest in the Ronald J. Daanen Trust dated December 30, 1955, to be held under all the terms and provisions of the new trust dated December 31, 1965. [4]
DATED: July 1, 1966 /s/ Ronald J. Daanen (Seal) Ronald J. Daanen KELLOGG CITIZENS NATIONAL BANK By Trust Officer (Seal) The preamble of each child's new trust agreement provides: [5]
Sylvester J. Daanen wishes to make further gifts to his three adult children. *270 On December 30, 1955, Sylvester J. Daanen owned a 50% interest in the partnership, Gold Bond Ice Cream Co., Green Bay, 289 Wisconsin. On that date he established three trusts, one for each of his children. Each trust was given a 6 2/3% [or 15% to the Lutsey trust] income interest in the Gold Bond Ice Cream Company for ten years and six months. On June 30, 1966, these trusts terminate and each 6 2/3% [or 15%] income interest reverts to Sylvester J. Daanen. He plans to give each child a complete 6 2/3% [or 15%] interest in Gold Bond Ice Cream Company in trust, one half in each of the calendar years 1965 and 1966. Simultaneously with the creation of the 1965 trusts a new partnership agreement was entered into naming the new trusts as limited partners. Pursuant to this agreement, profits and losses were to be distributed as follows: 6. Profit and Loss - The net profits or losses of the partnership shall be divided among the partners in the percentages listed *271 below, provided that the liability of the limited partners for losses of the partnership shall in no event exceed the amount of each one's capital account. Thomas H. Lutsey 35% Stlvester J. Daanen 30% Kellogg Citizens National Bank as Trustee for - Ronald J. Daanen Trust dated 12-30-55 6 2/3% until 6-30-66 Mary Ellen Daanen Trust dated 12-30-55 6 2/ % until 6-30-66 Sharon C. Daanen Trust dated 12-30-55 6 2/3% until 6-30-66 Thomas Jay Lutsey Trust dated 12-30-55 15% until 10-2-69 Ronald J. Daanen Trust dated 12-31-65 6 2/3% after 6-30-66 Mary Ellen Troup, Jr. Trust dated 12-31-65 [6] 6 2/3% after 6-30-66 Sharon C. Koch Trust dated 12-31-65 [7] 6 2/ % after 6-30-66 Thomas Jay Lutsey Trust dated 12-31-65 15% after 10-2-69 7. Withdrawal of Profits - Within four months after the end of each fiscal year of the partnership and at such other times during the year as the partners shall mutually determine, any limited partner shall have the right to withdraw its share of the partnership net profits for the preceding year. *272 In addition, this agreement conferred upon the trusts the following rights and restrictions should they decide to withdraw from the partnership: 13. Withdrawal of limited partners - Any limited partner shall have the right to withdraw or reduce its investment in the partnership at the end of any year, provided three month's prior written notice shall have been given to both the general partners at the principal office of the partnership. In addition, any limited partner shall have the right to withdraw its investment upon termination of the partnership. Notwithstanding the foregoing, no part of the investment of any limited partner shall be withdrawn unless all liabilities of the partnership, except liabilities to general partners and to limited partners on account of their interests, have been paid, or unless the partnership has sufficient assets to pay them. The investment of any limited partner under a trust dated December 30, 1955 is agreed to be: (1) its capital account, representing its undrawn profits from prior years, (2) plus or minus its share of any profit or loss of the partnership for the current year to the end of the month preceding the withdrawal or reduction, *273 less any withdrawals during the current year, and (3) an amount representing the present value of the trusts' right to income for its remaining term computed as follows: Assume this trust's share of the partnership income for each year during the remainder of the term will be one-half its share of the income for the year preceding the year in which the trust is withdrawing, and discount to present value using a 10% per annum rate. This purchase price includes payment for the goodwill of the business. The manner of payment shall be as stated in Paragraph 15. The investment of any limited partner under a trust dated December 31, 1965 is agreed to be determined as follows: Early in each year the general partners and the Trustee for the limited partners under the trusts dated December 31, 1965, shall sign a statement setting forth the value as of January 1 of the interest of each such partner. This statment shall be part of the statement required in Paragraph 14. The value of the investment of such limited partner shall be the value specified in this statement, share of the partnership net profits or losses since January 1, less withdrawals made by the withdrawing partner since January *274 1. This price includes payment for the goodwill of the business. The manner of payment shall be as stated in Paragraph 15. Pursuant to section 124.02 of the laws of the State of Wisconsin, Daanen, Lutsey, 290 and Kellogg recorded with the Register of Deeds of Brown County, Wisconsin, a "Certificate Required by Uniform Partnership Act." This certificate, dated December 31, 1965, contains the following provisions: 4. The partners are contributing no cash, but each is contributing an undivided interest in Gold Bond Ice Cream Co., to wit: Thomas H. Lutsey
35%
Sylvester J. Daanen
30%
Kellogg Citizens National Bank as Trustee for
Ronald J. Daanen Trust, dated 12-30-55
6 2/ % until 6-30-66
Mary Ellen Daanen Trust, dated 12-30-55
6 2/3% until 6-3/-66
Sharon C. Daanen Trust, dated 12-30-55
6 2/ % until 6-30-66
Thomas Jay Lutsey Trust, dated 12-30-55
15 until 10-2.69
Ronald J. Daanen Trust, dated 12-31-65
6 2/ % after 6-30-66
Mary Ellen Troup, Jr., Trust dated 12-31-65
6 2/3% after 6-30-66
Sharon C. Koch Trust, dated 12-31-65
6 2/3% after 6-30-66
Thomas Jay Lutsey Trust, dated 12-31-65
15 after 10-2-69
On December 31, 1965, immediately before any *275 gifts were made, the term trusts had accumulated and returned the following amounts for use in the partnership: Trust for the benefit of:
Thomas Jay Lutsey
$109,492.00
Ronald J. Daanen
48,321.00
Mary Ellen Troup, Jr
48,321.00
Sharon C. Koch 48,321.00
$254,455.00
The value of the entire partnership on December 31, 1965, immediately prior to making any gifts, is stipulated as being $1,209,560, computed by capitalizing the partnership earnings over the five years preceding 1965. The capital accounts of the general partners as of December 31, 1965, shows Lutsey with a capital investment of $252,624 and Daanen with $217,155. In determining the amount of the gifts to report for Federal gift tax purposes, Daanen took 3 1/3 percent of $950,333 for each of his three children for both 1965 and 1966. Lutsey took 7 1/2 percent of the same figure for 1965 and 1966. The $950,000 figure represents Daanen and Lutsey's estimation of the value of the partnership aside from the funds attributable to the term trusts. Federal gift tax returns were filed by Sylvester and Evelyn Daanen (gift splitting between spouses) for 1965 and 1966 reporting as gifts to each of their *276 three children 3 1/3 percent of $950,000, or $31,131 for each year. [8]
Federal gift tax returns were also filed by Thomas and Bernice Lutsey, each reporting their share of gifts to Thomas Jay of 7 1/2 percent of $950,000, or $71,250 reduced to $62,634 taking into consideration an actuarial factor for the income interest remaining in the 1955 trust. Following Daanen's death on June 13, 1967, the entire family interest in the partnership was sold. In accordance with paragraph 14 of the 1965 partnership agreement, a sale was entered into on September 13, 1967, wherein the estate of Sylvester J. Daanen, Ronald J. Daanen, Mary Ellen Troup, Jr., Sharon C. Koch, and Kellogg as trustee, sold their interests in Gold Bond to Lutsey or his nominee. The purchase price of the above trusts was as follows: INTEREST OF THE ESTATE OF SYLVESTER J. DAANEN 30% of $950,000 - $285,000
INTEREST OF THE THREE DAANEN CHILDREN
Account of each child in term trust at December 31, 1965
$ 48,320.61
Income for 1966
14,235.80
Drawings for 1966 (16,500.00)
Adjusted trust balance
46,056.41
6 2/3% of $950,000 63,333.33
Total interest per child
$109,389.74
$109,389.74 X 3 children
$328,169.22
*277 Deficiencies were determined in petitioners' gift taxes for both 1965 and 1966. The cases with respect to taxable year 1965 have been settled and the taxes paid. [9] The basis of the settlement was an agreement by the parties that the value of the partnership at the time of the gifts was $1,209,560, and the amounts of the gifts were 291 determined by taking the applicable percentage thereof. Opinion The primary issue to be decided here is what interest in the partnership was actually transferred by the donors. The critical question to be answered is to what extent the accumulated income of the term trusts, retained by the partnership for use in its business, must be taken into account in computing the amount of the gifts made in 1966. More particularly, we must determine whether the funds attributable to the trusts were capital investments in the partnership or loans to it. In 1955, Daanen and Lutsey created term trusts for each of their respective children. They transferred to each trust an interest in the income of the *278 partnership. Each year for approximately ten years the bulk of the partnership income attributable to the trust was retained by the partnership and employed in carrying on the business. By December 31, 1965, the partnership had retained funds attributable to the then existing trusts in the following amounts: Trust for the benefit of:
Thomas Jay Lutsey
$109,492.00
Ronald J. Daanen
48,321.00
Mary Ellen Troup, Jr
48,321.00
Sharon C. Koch 48,321.00
$254,455.00
Following the termination of the 1955 term trusts, Daanen and Lutsey created new trusts for each child to commence operation upon termination of the term trusts. The new 1965 trusts were irrevocable and were to terminate on the settlor's death. The corpus of the new trust was to consist of a 6 2/3 percent interest in the partnership with respect to each Daanen child and 15 percent with respect to Thomas Jay Lutsey. Through documents executed by each child and the trustee in December 1965, the interest of each 1955 term trust in the accumulated earnings retained by the partnership was to be transferred to the corpus of the new 1965 trusts. [10]
*279 For state tax reasons, any gifts made by Daanen and Lutsey were made one-half in 1965 and one-half in 1966. The parties agree that as of December 31, 1965, the value of the entire partnership was $1,209,560, computed on the basis of capitalized earnings. It is respondent's contention, however, that in 1966 Daanen and his wife transferred 3 1/3 percent of the entire value of the business to the trust for each of the children. This contention is based on the determination that the funds within the partnership attributable to the 1955 term trusts are in the nature of a liability or debt as opposed to a capital interest. From this respondent concludes that since the stipulated value of the business is computed on the basis of capitalized earnings (as opposed to a net asset method) such a debt is not to be taken into account and therefore the gifts to the children are to be determined in the following amounts: Thomas Jay Lutsey (7 1/2% X $1,209,560)
[11] $ 90,717
Daanen children (3 X 3 1/3%=10% X $1,209,560
120,956
Petitioners, *280 on the other hand, contend that either the funds retained and used by the partnership are to be classified as capital investments of each trust and therefore must be taken into account in determining the amount of the gift to each trust or, in the alternative, if said funds are a liability or debt owed to the trusts that such a debt must be deducted from the value of the entire business prior to calculating the amounts of each gift. The first method would produce gifts in the following amounts: Thomas Jay Lutsey Value of 15% of Gold Bond
$181,434.00
Portion attributable to capital investment 109,492.00
Amount of total gift
71,942.00
1/2 transferred in 1966
35,971.00
Daanen children Value of 20% of Gold Bond
$241,912.00
Portion attributable to capital investment 144,963.00
Amount of total gift
96,949.00
1/2 transferred in 1966
$ 48,474.50
Petitioners' second approach would result in gifts amounting to:
Thomas Jay Lutsey Total value of Gold Bond
$1,209,560.00
Less amount attributable to all four trusts 254,455.00
Net value
$ 955,105.00
Amount of total gift (15%X $955,105)
143,266.00
1/2 transferred in 1966
71,633.00
Daanen children
Net value as determined above
$ 955,105.00
Amount of total gift (20%X $955,105)
191,021.00
1/2 transferred in 1966
$ 95,510.50
*281 292 The proper method of calculating the amount of the gifts depends on the character of the funds attributable to the 1955 term trusts and retained by Gold Bond for use in carrying on its business. After a thorough analysis of the record, we are convinced that the funds represented a capital investment by the trusts. Many of the characteristics typifying a loan or indebtedness are absent in this case. First, there is no written evidence of indebtedness of Gold Bond to any of the trusts, the trustee, or the beneficiaries. Second, no provision is made for an interest return on the funds. On the contrary, any return to be realized must be derived from the trusts' allocable percentage of an increase in the business' net profits. Third, by the 1955 partnership agreement, the interests of the trusts are relegated to a position subordinate to general creditors. This must be considered in light of the terms of the trust agreement expressly prohibiting the independent trustee from making loans to the partnership, without adequate security and interest. The funds in question were used in the business activity of Gold Bond as a part of the business capital and the risk of loss of those *282 funds (had the business failed) was clearly on the trusts. We are aware that certain factors urged by respondent could possibly support a conclusion that the character of the retained accumulated earnings was other than a capital investment. However, in determining the proper classification, it is necessary that a comparison of all of the factors be made, and on balance we are convinced that petitioners' view is correct. We do not feel this conclusion should be disturbed by the fact that twice the parties herein made calculations regarding the trusts that are possibly inconsistent with the trusts having a capital interest. First, upon filing their 1966 gift tax returns, the amounts of the gifts were computed by taking a full 3 1/3 (7 1/2 in the case of the Lutseys) percent of what Daanen and Lutsey considered to be the value of the partnership apart from the investments of the trusts ($950,000). Second, upon the death of Sylvester Daanen, Lutsey or his nominee negotiated the purchase of the partnership interests from Daanen's estate and his three children. [12] In so doing, the purchase price of the children's interest was computed by taking 6 2/3 percent of the believed value ($950,000) *283 and adding thereto an amount equal to the amount previously retained by the business and attributable to the trust of each child. The conduct of the parties in both of the above instances is at best inconclusive as to their intent, and demonstrates the general atmosphere of confusion that surrounds all of their transactions. Moreover, even if we were to consider this conduct as probative of their intent, calculations made by the principals to a transaction cannot color the true character of what transpired. While the treatment by taxpayers may be some evidence of their intent, we do not consider the above conduct to indicate an intent that the interests of the trusts were in the nature of a liability rather than a capital investment. Respondent also argues that the interest of *284 the trust cannot be characterized as capital in nature under section 704(e)(1), [13] as amplified by section 1.704-1(e)(1)(v), Income Tax Regs.This regulation provides as follows: (v) Capital interest in a partnership. For purposes of section 704(e), a capital interest in a partnership means an interest in the assets of the partnership, which is distributable to the owner of the capital interest upon his withdrawal from the partnership or upon liquidation of the partnership. The mere right to participate in the earnings and profits of a partnership is not a capital interest in the partnership. Respondent contends that *285 since the partnership agreement limited the amount a trust is entitled to upon withdrawal or termination to the amount of accumulated income retained by the business, the trusts do not possess an interest in the assets of the partnership and therefore have no capital interest. We disagree. Not only do we 293 question the applicability of the regulation to this case, but even conceding application we think the regulation is fully complied with. The regulation itself limits the definition of capital interest to the "purposes of section 704(e)." In light of such a limitation, it is questionable whether the regulation can be applied to a gift tax case such as this one, and under any circumstances it is clearly not binding. In any case, the requirements of the regulation are met by the facts of this case. The distinction to be made here is graphically illustrated by comparing the interest in the partnership constituting the corpus of the 1955 trusts with the interest acquired by investing the accumulated income. The corpus of each trust consisted of a 6 2/3 percent (or 15 percent) interest in *286 the business. Should a trust terminate due to a beneficiary's death or expiration of the specified term, the interest in the partnership constituting the corpus reverted to the settlor. The interest held by the trust was not entitled to a share of the assets upon withdrawal nor upon liquidation, i.e., it was an income interest. In contrast, the interest acquired by reinvesting accumulated income in the partnership is of a different nature. The funds, once left in the business became an asset of that business either in the form of capital for business use or via the purchase of materials or equipment. Upon withdrawal or liquidation, the trust is clearly entitled to receive the share of the assets represented by the amount contributed by that trust. While a right to no more than its contribution deprives the trust of participation in any appreciation in the partnership's assets, it was entitled to share in the partnership's assets to the extent of its contribution. That a partner foregoes participation in any asset appreciation and instead relies solely on his portion of income for a return on his investment does not foreclose the characterization of his interest as capital in nature. *287 Much of respondent's argument on brief is directed toward showing that Daanen and Lutsey intended to transfer 20 percent and 15 percent, respectively, of the entire partnership in addition to the amounts already attributable to the trusts. In support of this contention, respondent argues that the language of the preamble of the 1965 trust agreements indicates such an intent. The preamble of all four trust agreements reads as follows: Sylvester J. Daanen wishes to make further gifts to his three adult children. On December 30, 1955, Sylvester J. Daanen owned a 50% interest in the partnership, Gold Bond Ice Cream Co., Green Bay, Wisconsin. On that date he established three trusts, one for each of his children. Each trust was given a 6 2/3% [or 15% to the Lutsey trust] income interest in the Gold Bond Ice Cream Company for ten years and six months. On June 30, 1966, these trusts terminated and each 6 2/3% [or 15 percent] income interest reverts to Sylvester J. Daanen. He plans to give each child a complete 6 2/3% [or 15%] interest in Gold Bond Ice Cream Company in trust, one half in each of the calendar years 1965 and 1966. Respondent argues that the use of the word "complete" *288 indicates an intention to transfer an interest in the entire partnership. We, however, think it far more plausible that by the use of the word "complete" it was intended that the trusts have a complete 6 2/3 percent (or 15 percent as to Lutsey) proprietary interest rather than merely an income interest as before. It is also possible (at least more so than respondent's contention) that "complete" refers to an intention that the children be given an interest that together with their prior invested funds would constitute a complete 6 2/3 percent (or 15 percent) interest in the business. The partnership agreement entered into in December 1965 clearly establishes the result that the parties intended to reach upon completion of their transactions. This document shows that when the 1955 term trusts terminate in mid-1966, the general partners and the new 1965 trusts as limited partners will have interests in Gold Bond of: Percent
Lutsey
35
Daanen
30
Trust for:
Thomas Jay Lutsey
15
Ronald J. Daanen
6 2/3
Mary Ellen Troup, Jr
6 2/3
Sharon C. Koch
6 2/3
Further support for this ultimate result can be found in the "Certificate Required By Uniform Partnership *289 Act" recorded by Gold Bond in conjunction with the 1965 partnership agreement. As set forth in provision 4 of the certificate, each limited partner (i.e., each trust) contributed a 6 2/3 percent (or 15 percent) undivided interest in the partnership, clearly indicating that at the conclusion of the transfers each trust was considered to own no more than 6 2/3 percent (or 15 percent) of Gold Bond. 294 As we view the record, what has transpired here is simply an attempt by the fathers to furnish their children a vehicle with which to purchase an interest in the family business. In doing so, they transferred an interest in trust for a 10 1/2 year term. The funds generated by this income interest were used to purchase an interest in the business, but by the expiration of the trusts' term the children's interests were less than Daanen and Lutsey wanted them to have. To remedy this shortage, the additional amounts necessary to vest in the children (via trusts) the desired 6 2/3 percent (15 percent) of the partnership was transferred to the trusts. For the reasons set out above, we believe the proper method of computing the gifts requires taking into account the accumulated income *290 of the trusts previously invested in the partnership. Upon conclusion of the transfers, the Daanen children each possessed a 6 2/3 percent interest in a business whose value is $1,209,560. [14] The value of each interest then is $80,637.33. The trust of each child possessed a capital interest in the partnership of $48,321 and absent any showing that this invested capital in fact represented a greater value of the partnership assets, we conclude that at least this amount must be considered as already owned by each trust. Since the donors cannot give that which they do not own, no more than the excess of $80,637 over $48,321, or $32,316, therefore, could have been transferred to each child, and only onehalf of this amount was transferred in 1966. As to Thomas Jay Lutsey, the computations are similar. His ultimate holding of a 15 percent interest in Gold Bond was worth $181,434. Prior to any transfer, the trust for his benefit had a capital interest of $109,492 and, therefore, no more than $71,942 was a gift, *291 one-half of which was transferred in 1966. The only other issue before us is the applicability of section 2504(c) in determining the gift tax liability of petitioners for 1966. This section provides: (c) Valuation of Certain Gifts for Preceding Calendar Years. - If the time has expired within which a tax may be as sessed under this chapter or under corresponding provisions of prior laws, on the transfer of property by gifts made during a preceding calendar year, as defined in section 2502(c), and if a tax under this chapter or under corresponding provisions of prior laws has been assessed or paid for such preceding calendar year, the value of such gift made in such preceding calendar year shall, for purposes of computing the tax under this chapter for the calendar year 1955 and subsequent calendarr years, be the value of such gift which was used in computing the tax for the last preceding calendar year, for which a tax under this chapter or under corresponding provisions of prior laws was assessed or paid. Petitioners settled a dispute regarding the gift tax owed for taxable year 1965 *292 arising out of the gift of one-half of the interests of Gold Bond transferred to the children in that year. Pursuant to the settlement, the taxes were assessed and paid. It has been stipulated that the time has expired within which a tax may be assessed with respect to 1965. Section 2504(c) applies only to questions of valuation. Sec. 25.2504-2, Income Tax Regs. Where a question involves an issue other than valuation, i.e., interpretation of the gift tax laws, section 2504(c) is not applicable and a reexamination of the prior transfer is permissible in calculating the correct gift tax liability for the year in question. See section 25.2504-1(d), Income Tax Regs. We view the issue involved herein as one of gift tax law and not valuation. The controversy now before us turns on the determination of the character of the accumulated income retained by the partnership. Such a determination is clearly a question of law and not of mere valuation. Having concluded above that a portion of what was allegedly transferred by the donors was a capital *293 interest of the donees and therefore did not constitute a gift, in computing the gift tax liability for 1966 this must be taken into account and the adjusted or correct amount of gifts made in 1965 must be used. We believe section 2504(c) precludes revaluing a prior gift only when the question involved concerns the fair market value of an item conceded to be a gift. See H. Rept. No. 1337, 83rd Cong., 2d Sess., p. 93 (1954), and 5 Mertens Law of Federal Gift & Estate Taxation p. 635. Where, as in the case before us, the question is whether or to what extent a transfer constituted a gift, a question of substantive gift tax law is involved and section 2504(c) does not preclude a reexamination of the prior 295 transfer to determine the correct amount of the prior gift for use in calculating the gift tax liability for the year in question. Accordingly, when computing the gift tax liability of petitioners herein for 1966 the conclusions set out above concerning the amount of the transfers made in 1965 and 1966 must be taken into account. Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Estate of Sylvester J. Daanen, Deceased, Evelyn M. Daanen, Executrix, docket No. 3034-69; Thomas H. Lutsey, docket No. 4669-69; and Bernice Lutsey, docket No. 4677-69.↩
2. While all gifts were reported on the basis of a ten-year term, it has been stipulated that the proper terms were 10 1/2 years for all but Thomas Jay, which was 14 years.↩
3. The documents signed by each of the four children are identical. For purposes of illustration, the document pertaining to Ronald J. Daanen is set out above. ↩
4. While the date appearing on the document is July 1, 1966, this date represents the day after the 1955 trusts were to terminate. It is established by ample evidence that the actual execution by all four children took palce in December 1965.↩
5. For purposes of illustration, the preamble of the Ronald J. Daanen trust is quoted. In the case of Thomas Jay Lutsey, 6 2/3 percent reads 15 percent and the name of Thomas H. Lutsey replaces Sylvester J. Daanen.↩
6. The former Mary Ellen Daanen married Wilson Troup, Jr., on June 13, 1964. ↩
7. The former Sharon C. Daanen married Thomas Koch on July 25, 1964.↩
8. The figure $31,131 is derived by taking 3 1/3 percent of $950,000 ($31,667) and deducting therefrom the amount attributable to the remaining actuarial interest of the 1955 trust.↩
9. The parties having submitted to the Tax Court a stipulated settlement, the Court entered decisions based on the settlement on September 30, 1968.↩
10. According to the transferring documents, the actual transfer was to take place upon termination of the 1955 trusts and operation of the 1965 trusts, i. e., June 30, 1966, for the Daanen trusts and October 2, 1969, for the Thomas Jay Lutsey trust.↩
11. These figures are imprecise since the actuarial value of the remaining six months of the 1955 term trusts must be taken into account.↩
12. According to the trust agreements, Daanen's death caused the termination of his children's trusts thereby vesting absolute ownership of a 6 2/3 percent interest in each child. For this reason, the purchase was made by Lutsey or his nominee from the Daanen children as individuals rather than from the trusts.↩
13. (e) Family Partnerships. - (1) Recognition of interest created by purchase or gift. - A person shall be recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person.↩
14. The dollar amounts set forth hereafter should be an illustration only. The exact computations will require a determination under Rule 50, Tax Court Rules of Practice.↩